HEATON PENINSULAR BUTTON-FASTENER CO. v. SCHLOCHTER-MEYER.

(Circuit Court of Appeals, Sixth Circuit. February 10, 1896.)

No. 359.

PATENTS—VALIDITY—BUTTON-FASTENING STAPLES.

The Vinton and the Prentice patents, Nos. 324,053 and 451,070, respectively, both for improvements in button-fastening staples, held void on demurrer for want of a patentable invention, apparent on the face of the specifications. 69 Fed. 592, affirmed.

Appeal from the Circuit Court of the United States for the Western Division of the Southern District of Ohio.

This was a suit to restrain the infringement of two patents, one United States letters patent (324,053), issued to John H. Vinton for a new and useful improvement in button-fastening staples, and the other United States letters patent (No. 451,070), issued April 28, 1891, to George W. Prentice, also for an improvement in button-fastening staples. The bill averred that the two patents had been duly assigned to the complainant. A demurrer was filed to the bill on the ground that both patents were void for want of patentable novelty. The court below sustained the demurrer on the ground that it could determine from common knowledge and the specifications of each patent that the device shown therein for which patents had issued did

not involve any patentable novelty or invention. The court accordingly dismissed the bill, and from this order the complainant has appealed. The drawings, specifications, and claims of the Vinton patent are as follows:

"Be it known that I, John H. Vinton, of Boston, county of Suffolk, state of Massachusetts, have invented an improvement in button-fastening staples for boot and shoe work, of which the following description, in connection with the accompanying drawings, is a specification, like letters on the drawings representing like parts:

"Staple-like fastenings have heretofore been made from round wire which is cut diagonally to form each staple length, the direction of the single cut being such as to leave a point, one surface of which is inclined and the other straight, the beveled part being that formed by cutting the wire diagonally, while the straight part is the original body of the wire. In the manufacture of staples wherein the wire is cut diagonally entirely across it to form points the said points have been left in line with the outer sides of the legs of the staple, to thus compel both legs to spread outwardly as the staple is clinched, and in other staples both points have been left at the inner side of the legs, to compel them to clinch inwardly; but in both these plans one side of the point has been left of the same convexity as the main part of the staple leg, as obviously must be the case as the result of making a clean cut through a cylindrical body at an angle to its longitudinal center. A point such as represented, beveled from one side of the wire entirely to its other side, is apt to run sidewise; and the clinching point, to be effective, has to be of considerable length. I have aimed to produce a staple with a clinching point which shall be as short as possible, and which will most readily cut its way through the material, and which, when clinched, will present a broad holding surface, not liable to be felt by the foot. As the result of my experiments I have produced a V-shaped point, the apex of which is located at one side of the center line of the leg of the staple, and preferably the said V-shaped point is made on a staple having slightly incurved legs, one side of the V-shaped point starting from the inner side of the staple leg, and the other from the outer side thereof. The V-shaped point is pressed, swaged, or flattened, and thus made broader than the diameter of the wire from which the staple is produced, the said point thus made thin readily cutting, as it were, a slit, into which the round leg of the staple follows; the broadened end, when clinched and curled against or inturned into the material, effectually preventing the staple from being drawn out therefrom, and, being thin, the said point does not leave a projection uncomfortable to the foot. In my improved staple the cutting edge of the spread V-shaped point stands substantially at right angles to a line drawn through the head of the staple and its two legs; or, in other words, the broad faces of the V-shaped points on opposite legs of the staple are substantially parallel. Fig. 1, in side elevation, on an enlarged scale, represents one of my improved fasteners or staples; Fig. 2, a side elevation of Fig. 1. Fig. 3 represents a button secured to material by a fastener; Fig. 4, an under-side view of Fig. 3; and Fig. 5 a section of Fig. 1 in the dotted

line, x x. In the drawings, a represents a button to be attached to material, b, which may be part of a boot, shoe, or other article. The staple, c. has two legs, and the end of each leg is beveled from both the inside and from the outside of the staple in the lines, d d, e e, thus making a V-shaped point, which, by pressure, is thinned and spread or made broad, as shown in Figs. 2 and 5, leaving a thin cutting edge, the beveled and flattened surface of which is longer in the line, f f, than the diameter of the wire of which the staple is made, and the direction of the length of the edge of the point is substantially at right angles (see Fig. 2) to a line, g g, drawn through the head of the staple, and intersecting its legs. The broadened V-shaped point is offset to occupy a position out of the line, h, which is the center line of the leg of the staple, to thus compel it to always clinch or turn in the desired direction; and when clinched (see Figs. 3 and 4) the V-shaped point re-enters the material at its under side, leaving a broad, flat, thin surface at the inner side of the shoe. The outline or general shape or curve of the legs of the staple before driving will preferably be substantially as in United States patent No. 312,986, to which reference may be had; that staple having preliminary bends to insure the bending of the staples at a uniform distance from the heads or crowns thereof, to thus leave a uniform length of loop above the material for the free play of the shank or eye of the button.

"I claim: (1) As an article of manufacture, a button-fastening staple, composed of wire, the legs of which are provided with V-shaped points broader than the diameter of the wire from which the staple is made, the cutting edges of both of said points being substantially at right angles to the length of the staple head, substantially as described. (2) A staple fastener for leather work, it having V-shaped points spread wider than the diameter of the wire, and set at one side of the center of the wire forming the legs above the point, to thus compel the staple to clinch uniformly in the desired direction, substantially as described.

"In testimony thereof, I have signed my name to this specification in the presence of two subscribing witnesses.      John H. Vinton."

The Prentice drawings, specifications, and claims were as follows:

FIG. 1.

FIG. 2.

FIG. 3.

"Be it known that I, George W. Prentice, a citizen of the United States, residing at Providence, in the county of Providence. and state of Rhode Island, have invented certain new and useful improvements in button fasteners; and I do declare the following to be a full, clear, and exact description of the invention, such as will enable others skilled in the art to which it appertains to make and use the same, reference being had to the accompanying drawings, and to the letters of reference marked thereon, which form a part of this specification:

"In the production of this invention or improvement in button fasteners formed from wire I have had a threefold object in view, namely: First, to provide for the centering of the button-eye shank in a curvilinear top or crown, to get equal strain upon the legs of the fastener; second, to provide two substantially parallel legs in connection with the body portion of the fastener to obtain directness of thrust of said legs into the material and maximum grasp of material thereby; and, third, in connection with said two objects, to provide the crown or top of the fastener with diverging side portions of peculiar construction, which, in connection with the legs, will, when the fastener

is clinched to the material, firmly clamp the material (within the grasp or reach of the clinched legs) between said legs and said side portions, whereby a broad, flattened securing base is provided for the crown or top to securely hold the button in place, and likewise to prevent the staple in use from turning in the material in such manner as to bring practically one leg or the other in the form of a hook on the upper or face side of the material, which objection has heretofore been common and serious to some forms of wire button fasteners, which, owing to their construction, did not provide for the clamping of the material between the prongs and the diverging side portions.

"Fig. 1 shows in elevation an outline or skeleton of a fastener embodying my invention, and also indicating in dotted lines a number of circles to point out more clearly the contrasted curves of the side portions and the arc-shaped top or crown; Fig. 2 is a similar elevation of my improved fastener ready for use; and Fig. 3 is an elevation of my improved fastener having a button strung upon it, and with its legs clinched to material, the material being shown in section. My improved fastener comprises a main or body portion and an attaching portion made from wire, the body portion consisting of an arc-shaped crown or top, a, and two side portions, b, which diverge from the crown, a, and each of which is composed of two contrasting curves or arcs, c. c', the whole forming a curvilinear body portion, the contour of the inner wall of which follows the contour of the outer wall thereof, each curve, c or c', on the inner side of said body portion, being concentric with the corresponding curve, c or c', respectively, on the outer surface or wall thereof. This body portion is provided with a leg or prong, e, projecting from each termination thereof, the said legs being substantially straight, and parallel with each other. By this construction, it will be observed by inspection of the drawings, bearing shoulders, f, are provided at the points where the legs, e, join the body portion to limit the penetration of said prongs, and to clearly define the body portion from the attaching portion of the fastener; and, further, by shaping the diverging side portions to provide contrasting curves or arcs, c. c', a portion of the inner walls of said portions will, when the legs, e, are clinched, as indicated in Fig. 3, bear upon the upper side or face of the material while said legs engage the underside thereof, so that the material within the grasp or reach of the bent or clinched legs is clamped between said legs and side portions, and the fastener securely held in given position in the material to provide, in effect, a broad, firm base for the crown top, a, whereby strain exerted on the button, x, will be equally distributed throughout the fastener on each side of the button eye, and, secondly, the fastener will be prevented from turning in the material when in use. Likewise it will be observed that, by reason of the side portions being formed of contrasting curves or arcs, c, c', the button-eye wire is, in effect, confined on three sides by the fastener itself to prevent lateral play thereof, while at the same time that portion of the fastener exposed on the face side of the material presents a neat and compact appearance.

"I claim a one-piece metallic button fastener, substantially uniform in size throughout, consisting, essentially, of an arc-shaped crown or top and two curvilinear side portions diverging from said crown or top, the whole forming a body portion the curvilinear contour of the inner wall of which follows substantially the curvilinear contour of the outer wall thereof, or is parallel therewith, and an attaching portion, consisting of two prongs or legs substantially parallel with each other, and depending from the extremities of the body portion, the junction of the legs with the body portion forming corners or bearing shoulders to define said body portion and to limit the penetration of the legs of the fastener into the material to which it is to be attached, substantially as described.

"In testimony whereof I affix my signature in the presence of two witnesses.                                   Geo. W. Prentice."

Otis B. Roberts, for appellant.

Arthur C. Dennison, for appellees.

Before TAFT and LURTON, Circuit Judges, and HAMMOND, J.

TAFT, Circuit Judge (after stating the facts). We have already discussed in the case of American Fibre-Chamois Co. v. Buckskin-Fibre Co. (decided at this term) 72 Fed. 508, the principles that should govern the court in a question of patentable novelty on demurrer, and it is not necessary to extend that discussion. The Vinton patent admits that the outline or general shape or curve of the legs of the staples before driving was old. With that hypothesis which the court was certainly entitled to proceed upon, we fully approve the following language of the learned judge in delivering the opinion of the court below:

"Vinton's improvement consisted in making a V-shaped point, the apex of which is located at one side of the center line of the leg of the staple, and which is pressed, swaged, or flattened, and thus made broader than the diameter of the wire from which the staple is produced. That is the only possible novelty in the Vinton patent. The setting of the points at one side of the center line of the leg of the staple, and the making of the staple with slightly in-curved legs, so that it will clinch in the desired direction, are * * * admitted to be old by the Vinton specification. Making the cutting edge of the staple points at right angles to the length of the staple head was a matter involving nothing more than ordinary mechanical skill. Now, it is a matter of common knowledge that if a round wire is pointed by being pressed or swaged or flattened upon two sides the diameter of the point will be and must be greater than the diameter of the wire. The making of such broadened points upon nails and staples was a matter of common knowledge years before the date of Vinton's patent. The old cut nail was made in this form for the very purpose mentioned in the patent, that the broad, flattened point might cut a slit in the wood through which the shank would enter, and thereby prevent splitting the wood. So it was with common nails and staples. With reference to the patentability of such an improvement the case of Double-Pointed Tack Co. v. Two Rivers Manuf'g Co., 109 U. S. 117, 3 Sup. Ct. 105, is cited and is pertinent.

"The Prentice patent is for a button fastener differing from the Vinton * * * fastener only in trifling particulars. Prentice took almost the exact form of the Vinton staple with the beveled ends, made a slightly different angle between the body of the legs, so as to make the crown portion with a double reverse curve instead of a single curve. Prentice provided his staple with a sort of supplementary crown, leaving shoulders against which the legs might be clinched. The old paper staple in common use long before Prentice's patent had a flat top against which the legs clinched, the top and the legs lying parallel after the clinching operation was finished. If such a staple was required to hold the eye of a button or any similar object, a portion of the crown must be raised so as not to bind against the paper or cloth or leather, and, the necessity being apparent, mechanical ingenuity was all that was involved in the requisite change of form. The complainant's patents are invalid upon their face for want of invention." 69 Fed. 592.

It will be observed that the learned judge in the court below was able to point out instances of similar devices within his personal observation of a kind necessarily within common knowledge. Herein is the distinction between this case and the Fibre-Chamois Cases (just decided) 72 Fed. 508, 516. The specifications and claims of the Prentice patent are somewhat complicated and verbose in describing a very simple mechanism. The decree of the court below is affirmed at the cost of the appellant.