GENERAL ELECTRIC CO. v. COOPER HEWITT ELECTRIC CO.

(Circuit Court of Appeals, Sixth Circuit. January 8, 1918.)

No. 3028.

PATENTS ⬳328—INVENTION—METHOD OF OPERATING VAPOR LAMPS.

 The Kuch patent, No. 883,725, for a method of operating mercury vapor lamps, claim 1, *held* void for lack of invention, in that the process or method of the patent was previously known and used for some purposes where the cost was not considered, and that the discovery of the patentee was only of its commercial utility when used under certain conditions.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; John H. Clarke, Judge.

Suit in equity by the General Electric Company against the Cooper Hewitt Electric Company. Decree for defendant, and complainant appeals. Affirmed.

Squire, Sanders & Dempsey, of Cleveland, Ohio, and Pennie, Davis & Marvin, of New York City (W. B. Morton and Wm. H. Davis, both of New York City, of counsel), for appellant.

Thos. B. Kerr and Parker W. Page, both of New York City, for appellee.

Before KNAPPEN, MACK, and DENISON, Circuit Judges.

DENISON, Circuit Judge. The appellant, as owner of the Kuch patent, No. 883,725, issued April 7, 1908, for a method of operating vapor lamps, brought this action in the court below against the appellee, for infringement of claim 1. The bill was dismissed because this claim was held invalid.

We think the judgment below may rightly be sustained upon a comparatively simple ground, which makes unnecessary any extended consideration of vapor lamps or of the operative principles involved. The mercury arc lamp is the most familiar type of the class to which the patent refers, and its general theory is recited in our opinion in the companion case (No. 3036). 249 Fed. 61, —— C. C. A. ——. The electric energy passed through such a lamp may be measured in terms of volts per centimeter of the lamp's length, the consumption of current in terms of watts, and the light-giving result in terms of candle power. Efficiency was, therefore, a matter of candle power per watt or watts per candle power. In the former method of statement, the extreme high point in the curve plotted upon a chart would represent the highest efficiency—that is, the most light in proportion to the electric energy used. It was well known that, as the voltage was increased, the efficiency increased until a certain point was reached, and thereafter further increase diminished the efficiency. Selecting the conditions of the alleged infringing lamp in order to get concrete figures, it was found that about 2 volts per centimeter gave the best result, and indicated the high point in the curve of candle power results, while 2¼, 2½, 2¾, and 3 volts per centimeter gave progressively diminishing results. We assume it to be the fact, as claimed in be-

half of the patent, that the experts in the art had accepted this as the fixed law of the operation of the lamp, and had therefore abandoned any thought of carrying the pressure higher in commercial lamps where economy of operation was important. Kuch discovered that, if the voltage was increased considerably beyond the supposed end of the economy road, contrary results followed, and, with very high pressures, the efficiency curve could be carried well above the formerly understood high point, thus achieving a second and greater maximum of efficiency. His discovery is broadly formulated in his patent by the first claim which reads:

"The method of working gas or vapor electric lamps having mercury electrodes to increase thir efficiency, which consists in applying to said electrodes an electric potential greater for unit length of column of light than that corresponding to the minimum point of its curve of efficiency, substantially as described."

Confessedly, Kuch devised no new apparatus. He only employed, in an existing apparatus, a potential greater than what had been supposed to be the limit of efficient use. Whether such a discovery is a patentable invention under any circumstances—one of the questions considered below—we pass by. For the purposes of this opinion, we assume that, if he had been the first person who intelligently and purposely persisted in such use of such potential, or to disclose that it could be used with some useful result, the discovery would have been a patentable process or method. See Bethlehem Co. v. Niles Co. (C. C.) 166 Fed. 880.

However, we cannot give him credit for this priority. High voltage develops great heat, and great heat melts glass. This fact, pehaps as much as the discouraging look of the efficiency curve, had prevented the use of very great pressures; but at least two or three years before Kuch's discovery mercury arc tubes had been made of fused quartz, which would endure extremely high temperatures. The physical obstacle to the increase of voltage in these lamps had therefore disappeared. We think the only reasonable interpretation of the record, giving Kuch the benefit of some doubts, is that, at the date of his discovery, all attempts to use, for commercial lighting, a voltage per centimeter of more than the equivalent of 3 in a tube of the diameter used in the infringing lamp had been abandoned, but that much higher voltages were in use in quartz tube lamps for laboratory experimental and scientific use. Even if it ought not to be assumed that these voltages above the formerly supposed "critical point" of the particular lamp were actually used from time to time as there was scientific or experimental need for lights of greater intensity, certain it is that from the time of Cooper Hewitt's first disclosure it was a commonly understood law of operation that the total light produced increased with the density of the vapor; that the necessary voltage per centimeter, with a given diameter of tube, increased at the same time, or, put the other way around, that an increased voltage produced greater density and more intense light. No one had ever supposed that there was any maximum limit to the light intensity thus to be obtained, short of atmospheric pressure or the destruction of the tube. It was, therefore, common knowledge, after the quartz tubes were in use, that lights

of highest intensity could be produced by the process of the patent, if anybody wanted such a light and did not care what it cost. It is quite immaterial whether we say that the patented process had been in use to accomplish a useful result by those who did not know that they were thereby accomplishing another useful result, or say that it was well known in the art that the use of the patented process would produce a useful result, although nobody had used it to produce that result because every one thought it would cost too much to do so. From either point of view, the sum of the matter is that Kuch only discovered a previously unknown law of operation involved in a known method; he discovered that light, produced by known lamps, operated by a known method, had not only the known quality of intensity, but also the previously unknown quality of cheapness. In still other words, while he was the first to make completely intelligent use of this high potential, he was not the first to use it—or, at least, to disclose that it could be used—for one useful and understood purpose. We are clear that such a discovery does not constitute a patentable invention—indeed, when the matter is thus stated, we do not understand counsel to contend otherwise. O'Reilly v. Morse, 15 How. 62, 14 L. Ed. 601; Burr v. Duryee, 1 Wall. (68 U. S.) 531, 17 L. Ed. 650; Wall v. Leck (C. C. A. 9) 66 Fed. 552, 13 C. C. A. 630; Carmichael v. Jackson (C. C. A. 7) 192 Fed. 937, 113 C. C. A. 327. In each one of the cases specially relied upon by plaintiff[1] it appears that the process or method was previously unknown, and not merely that its commercial utility was unknown.

Even if we accept plaintiff's theory that the low pressure lamp and the high pressure lamp should be considered as separate things, and not as a unit embodying the progressive pressure, yet plaintiff is no better off; they are certainly very analogous to each other. In the low pressure lamps, it was the common practice to increase the voltage until tests indicated that the high efficiency point for that particular lamp had been reached; and this is what Kuch did with the high pressure lamp.

The decree below proceeded in part upon the theory that the infringing lamp—which plaintiff must consider the patented lamp—had its minimum point of efficiency at about 3 volts per centimeter, but in operation used a potential increased to about 8 volts per centimeter, thus indicating that the use of the latter voltage would infringe or would anticipate. It was conceded that earlier lamps had been operated at a pressure of 8 or more volts per centimeter, and thus, it was thought the patent's invalidity was shown. Plaintiff now says that there is no necessary relationship between volts per centimeter and the efficiency curve, but that the diameter of the tube, or amperage, must be taken into account, and that, when the figures are thus rectified, it will be found that (e. g.) the voltage per centimeter of 8, used on the Bastian early lamp, was equivalent to a voltage per centimeter of 2

---

[1] Nielson v. Harford, Webster's Patent Cas. 275; Badische Co. v. Kalle (C. C.) 94 Fed. 163; American Co. v. Howland Co., 80 Fed. 395, 25 C. C. A. 500; Byerley v. Sun Co., 184 Fed. 455, 106 C. C. A. 537; Carnegie Co. v. Cambria Co., 185 U. S. 403, 22 Sup. Ct. 698, 46 L. Ed. 968.

on the infringing lamp, and hence the Bastian voltage of 8 was before his lamp touched its minimum efficiency, just as the defendant's voltage of 2 is above or before the minimum efficiency point of defendant's lamp. We are inclined to the view that plaintiff is right in this position, and that earlier lamps cannot be pronounced anticipations of Kuch's actual discovery merely because they were operated at voltages per centimeter higher than the defendant now uses; but the misapprehension now charged against the court below seems to have been shared by the patentee. Plaintiff now says, in effect, that the efficiency curve is determined by the watts input instead of by the voltage per centimeter; but the patent itself suggests no measure save the latter, and the second claim (not in suit) is drawn in terms of the latter measure. Plaintiff, in effect, confesses that the second claim fails to formulate the invention, unless the claim happens to be applied to a lamp of the same diameter as the one which the patentee was using. We see, therefore, that plaintiff's attack upon the decree below in this respect, if the attack is in truth well founded, develops a very considerable defect in the patent specification. Nowhere does the patent indicate that the amperage, or the diameter of the tube, is an essential factor in determining the existence or use of the patented invention. Whether this incompleteness of explanation might be fatal, or whether the profession, to which it was addressed, ought to be thought sufficiently skilled to supply the deficiency, we need not consider.

There is another difficulty in plaintiff's way: The claim in suit includes any use of a voltage per centimeter greater that that "corresponding to the minimum point" of that particular lamp's curve of efficiency. Taking the same concrete instance which we have used, the defendant's infringing lamp, the plotted curve shows that an increase of the voltage from 3 per centimeter, which is the minimum point of the curve, up to about 6 per centimeter, gives no efficiency above the first maximum which had been reached with about 2 volts per centimeter. We find, therefore, a range of increase within the terms of the claim which seemingly produced no new result whatever along those lines of efficiency in which the invention consisted. If the claim had called for using a voltage greater than that corresponding to the minimum point of efficiency, and continuing that increase until the lamp passed its former known maximum of efficiency, it would have defined the invention which is now claimed to be new and useful. As the claim now reads, it is broader than this definition will justify. We do not overlook some considerations tending to weaken the conclusion of invalidity claimed to result on this ground; but at least there is, in this matter, a considerable difficulty to be overcome by plaintiff before the less technical questions can be reached.

The decree below is affirmed.